IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TANISE JACKSON, individually and
as the Mother and Next Friend of
MARVELLE MAYO, an infant,

                            Plaintiffs,

v.                                          CIVIL ACTION NO. 3:14-15086

UNITED STATES OF AMERICA and
ST. MARY'S MEDICAL CENTER, INC.,
a West Virginia Corporation,

                            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is a motion for continuance of the discovery deadline brought by Defendant St. Mary's Medical Center ("St. Mary's") and United States of America ("United States") (collectively "Defendants"). ECF No. 112. Plaintiff Tanise Jackson ("Ms. Jackson") opposes the requested continuance, ECF No. 114, which would require pushing back all deadlines in the already twice-amended scheduling order. *See* ECF No. 112; ECF No. 112–7 (proposed third scheduling order). Although the Parties have requested a hearing on Defendants' motion, ECF No.'s 117, 120, the Court DENIES this request because the briefing contains all the facts necessary for the Court to render a decision on the instant motion. Finding no good cause for amending the scheduling order for a third time, the Court DENIES Defendants' requested continuance.

### I.    Background

This action arises out of an injury Ms. Jackson's son, Marvelle Mayo, received at birth allegedly due to his untimely delivery by doctors at St. Mary's Medical Center, a federally

qualified health center (FQHC). Based on St. Mary's status as an FQHC, Ms. Jackson alleges the United States also bears liability for this injury under the Federal Tort Claims Act (FTCA).

On April 21, 2014, Ms. Jackson filed this suit. ECF No. 1. A scheduling order was entered on February 12, 2015. ECF No. 49. This first scheduling order was amended on July 14, 2015 by the Court at the request of all parties. ECF No. 73. In October 2015, St. Mary's asked the Court to modify the second scheduling order because St. Mary's lost one of its lead attorneys on the case and it needed time to complete depositions. ECF No. 91. Plaintiffs contested modifying the scheduling order to permit more depositions, arguing no good cause existed for extending discovery. ECF No. 96. After a hearing, the Court granted St. Mary's requested continuance and extended the discovery deadlines, which required pushing back the trial date. ECF No. 102. As a result of the continuance, the parties have completed extensive discovery in this case, including all twelve of the previously scheduled depositions of Ms. Jackson, her experts, and others.

Now, St. Mary's asks the Court to amend the third scheduling order by extending the deadline for discovery, which again requires pushing back all other deadlines in this case, including the trial date. ECF No. 112. St. Mary's contends the discovery deadline must be pushed back because: (1) Plaintiff needs to appoint a conservator to represent her son in this action; and (2) Defendants are entitled to a court-ordered medical exam of Ms. Jackson's son, which would in turn require filing supplemental expert reports. The Court will first detail the legal standard for amending the scheduling order, then discuss St. Mary's request for continuance.

## II. Legal Standard

Scheduling orders may be modified only for good cause and with the court's consent. Fed. R. Civ. P. 16(b). Rule 16(b)'s good cause standard focuses on the diligence of the moving party. *Montgomery v. Anne Arundel Cty., Maryland*, 182 Fed. App'x 156, 162 (4th Cir. 2006) (citations

omitted); *see also Essential Hous. Mgmt., Inc. v. Walker*, 166 F.3d 332 (4th Cir. 1998). To establish good cause, the movant must show the deadlines cannot reasonably be met despite the movant's diligence; good cause is lacking if the movant has not acted diligently to comply with the schedule. *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (citations omitted). District courts have discretion to consider other factors before amending a scheduling, which include: the danger of prejudice to the non-moving party, the length of delay and its potential impact on the proceeding, the movant's reason for the delay, and whether the movant acted in good faith. *Hunt v. Brooks Run Min. Co., LLC*, 51 F. Supp. 3d 627, 636 (S.D.W. Va. 2014) *aff'd*, 610 F. App'x 340 (4th Cir. 2015).

### III. Discussion

Defendants want to extend the scheduling order's deadline for discovery because they claim: (1) Ms. Jackson needs to appoint a conservator to represent her son in this action; and (2) Defendants are entitled to a court-ordered medical exam of Ms. Jackson's son. If either of these is true, Defendants say they cannot complete necessary discovery within the time-frame of the existing scheduling order. Considering St. Mary's reasons for requesting this extension and that this is their second request to extend the discovery deadline, the Court concludes below that good cause does not exist for modifying the scheduling order.

### A. Plaintiff can maintain this action on her son's behalf without being appointed conservator

Defendants contend modification of the scheduling order is necessary because Ms. Jackson must have a conservator appointed in order for this action to continue, and such will take an indefinite amount of time. Ms. Jackson brings this action individually and on her son's behalf. To the Court's knowledge, Ms. Jackson has full parental rights over her son. Initially, Plaintiff requested a substitution of parties so that a Michigan-appointed conservator could prosecute this action on her son's behalf, instead of her doing so as his mother. After Defendants filed the instant

motion for continuance, Plaintiff withdrew her request for substitution. This would have mooted the first basis for Defendants' requested continuance. But Defendants now contend, without providing any legal support, that Plaintiff is unable to prosecute this action on her son's behalf if she is not appointed by a state court as her son's conservator. This argument is without merit. An individual with full parental rights has a legal right to maintain an action on her son or daughter's behalf against parties that have allegedly injured her son or daughter. *See Jordan v. Bero*, 210 S.E.2d 618, 636-37 (1974) ("During his minority, his parents or guardians may also recover damages for such impairment or loss of earning capacity occurring during the infant plaintiff's minority proximately resulting from the negligent conduct of a defendant."); *see also Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990) (Kennedy, J. concurring and dissenting) ("The common law historically has given recognition to the right of parents, not merely to be notified of their children's actions, but to speak and act on their behalf."). Because Ms. Jackson has withdrawn her request to add a conservator in her place, and because she has a right to bring this action on her son's behalf, the Court finds no good cause for amending the scheduling order so that Ms. Jackson can be appointed conservator over her son.

### B. Defendants are not entitled under Federal Rule 35 to a court-ordered medical exam of Plaintiff's son

Defendants request a medical exam to "determine Marvelle's current condition." Joint Mot. for Continuance at 1, ECF No. 112. According to Defendants, this new medical exam is warranted because Plaintiff's medical expert recently reviewed a video of Marvelle taken by his mother and rendered an opinion about Marvelle's condition based on that video. Def.s' Joint Reply 6–7, ECF No. 119. The only way Defendants' medical experts can render an accurate opinion about Marvelle's current condition and calculate his life expectancy, Defendants claim, is through a medical examination. *Id.* at 7.

Pursuant to Rule 35, a court may order a party whose mental or physical condition is in issue to submit to a physical or mental exam by a suitably licensed or certified examiner. Fed. R. Civ. P. 35(a)(1). But the court may only order an exam under Rule 35: (1) if the relevant physical or mental condition is in issue; (2) in response to a motion showing good cause for the exam; and (3) after notice to all parties and the person to be examined. Fed. R. Civ. P. 35(a)(2). A parent or guardian suing to recover for injuries to a minor may be ordered to produce the minor for examination. Fed. R. Civ. P. 35 advisory committee's note to 1970 amendment. By its terms, Rule 35 does not limit the number of exams which can be ordered, and even when an exam has previously been ordered in the same case, a subsequent exam may be ordered if Rule 35's requirements are met. *See Id.* Whether good cause exists for a second or successive exam demands asking if yet another examination is warranted despite a previous examination or series of examinations having already been completed in the same case.

Defendants have failed to demonstrate good cause exists for ordering another medical exam of Marvelle. Barely six months ago, on August 6, 2015, Defendants' expert, Edward Dabrowski, M.D., completed a medical exam of Marvelle. *See* Letter from Dr. Edward Dabrowski to Fred B. Westfall, Ass't U.S. Att'y, U.S. Dep't of Justice (Aug. 6, 2015), ECF No. 112–2. In his report, Dr. Dabrowski concluded that Marvelle lives with chronic encephalopathy, microcephaly, seizure disorder, severe spastic quadraparesis, cortical blindness, tracheostomy, and other conditions. *Id.* at 3. Marvelle uses a feeding tube; he has a "poor prognosis with reduced lifespan"; and he will "be dependent and require total care for his entire life." *Id.* Dr. Dabrowski provided these findings in a letter to counsel for the United States dated August 6, 2015. Judging from Dr. Dabrowski's findings, including that Marvelle's prognosis is poor, Marvelle's medical condition is not subject to a change that would warrant ordering a second medical exam, especially one

barely six months after an exam by Defendants' medical expert. Moreover, Marvelle requires constant care of various physicians and medical staff; presumably this care generates records of Marvelle's current condition and treatment that have been discoverable and readily available to experts on both sides. Lastly, ordering this not-even-necessary medical exam would entail substantial delay to this already twice-postponed trial.[1] As such, Defendants have failed to show good cause for ordering a medical exam only six months after a medical exam was already completed by their expert.[2]

Because Defendants have failed to show good cause for a medical exam, they have not satisfied Rule 35. And because no medical exam will be ordered, Defendants cannot rely on this as a basis for needing extra time to complete discovery.

**C. Diligence of St. Mary's**

Considering that the Court has rebutted and denied Defendants' reasons for requesting a discovery deadline extension, the Court concludes Defendants can comply with the existing discovery deadline by acting diligently. Defendants have had Ms. Jackson's video for more than a

---

[1] Not only would it take time for the medical exam to be scheduled for Marvelle, who lives out of state, but conducting the exam and writing up findings would take even more time. Afterward, the medical exam would need to be circulated to the Parties' experts for their preparation of supplemental reports. Then, those supplemental reports would need to be exchanged in order for the experts to opine on them. To properly consider the medical exam and all the findings, the Parties would likely need additional depositions. From start to finish, the medical exam would entail enough additional discovery to work a mighty delay, taking a robust amount of time—months if done carefully and adequately.

[2] The Court is unpersuaded by Defendants' argument that the exam is necessary to prevent prejudice to them allegedly caused by late disclosure of Ms. Jackson's video of Marvelle. Def.'s Reply at 6. Although Plaintiff's expert reviewed the video and "changed" his opinion based on the video, Defendants have had access to the same video for some time. Defendants' medical experts could have also reviewed the video and updated their opinions based on it. In turn, the medical experts' revised opinions could have informed Defendants' "non-medical" expert, Robert Shavelle, Ph.D. so that he could render an updated life expectancy calculation. Plaintiff's expert had nothing more than Defendants' experts. If Plaintiff's expert could reach a conclusion from the video, why could Defendants' medical experts not do the same?

month. If they wish to have supplemental expert reports prepared based on that video, they have ample time to do so before they must produce that report to Plaintiff. Furthermore, the Court notes that Defendants' motion is the third proposal to amend the scheduling order in this case. Once before, St. Mary's requested a 90-day extension of discovery because of its change in counsel and its inability to complete expert depositions on time. Now, St. Mary's and the United States ask for another continuance, yet again to complete more discovery. There seems to be no end to Defendants' requests for more time to complete discovery. If left unrestrained, parties in many cases would attempt unceasingly to build their case by trying to discover more and more facts helpful to their position, but at some point the Court has to cut-off the parties' expedition into the rabbit hole and say that any potential new facts floating in the ether are simply too unimportant or too unlikely to surface to warrant granting more time for discovery. Such is the case here. Considering the two other discovery deadline extensions previously granted in this case, Defendants have had more than enough time to complete discovery. As the recent amendment to Federal Rule of Civil Procedure 1 makes clear, this dispute should come to a "just, speedy, and inexpensive" resolution, and Defendants, as well as this Court, are obligated to pursue that end.

### IV.     Conclusion

Although the Parties have requested a hearing on Defendants' motion, ECF No.'s 117, 120, the Court **DENIES** this request because the briefing contains all the facts necessary for the Court to render a decision on the instant motion. Finding no good cause to amend the scheduling order, the Court **DENIES** Defendants' request for continuance.

The Court **DIRECTS** the Clerk to send a copy of this written Order to counsel of record and any unrepresented parties.

ENTER:     February 8, 2016

-7-

ROBERT C. CHAMBERS, CHIEF JUDGE